UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR. NO. 22-00010 LEK |
|---|---|
| Plaintiff, | |
| vs. | |
| MICHAEL K. PERRY, JR., | |
| Defendant. | |

**ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS, [FILED 9/19/22 (DKT. NO. 28)]**

      Before the Court is Defendant Michael K. Perry, Jr.'s ("Perry") Motion to Suppress ("Motion").  [Motion, filed 9/19/22 (dkt. no. 28).]  Perry submits that the arresting officer violated the Fourth Amendment when he detained Perry and his vehicle without reasonable suspicion, and therefore the evidence gathered – drugs, firearm, and ammunition – must be suppressed. [Motion, Mem. in Supp. at 1-2.]

      Plaintiff United States of America ("the Government") argues that "[l]aw enforcement had reasonable suspicion to temporarily detain [Perry]."  [Government's Response in Opposition to Defendant's Motion to Suppress, filed 9/26/22 (dkt. no. 31) ("Mem. in Opp."), at 1-2.]  It submits that the investigatory stop was based on a reasonable suspicion that Perry was involved in criminal activity – suspected drug trafficking.  Third-party information and the presence of

marijuana seen in plain view in the vehicle (and its subsequent disappearance) developed into probable cause for his subsequent arrest and the impounding of his vehicle until a search warrant was obtained to search it.

The Court denies the Motion because, based on the testimony presented at the suppression hearing and in the parties' submissions, the officer had reasonable suspicion to detain Perry in his vehicle and had probable cause to arrest him. Evidence of illegal substances, firearm, and ammunition recovered pursuant to the search warrant obtained because of Perry's detention and subsequent arrest are therefore admissible at trial.

## **FACTUAL BACKGROUND**

On February 3, 2022, an indictment was returned against Perry charging him with three felony offenses related to drug trafficking. [Indictment, filed 2/3/22 (dkt. no. 1).] Count One charges Perry with possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); Count Two charges Perry with possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and Count Three charges Perry with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). [Id. at 2-3.]

On September 19, 2022, Perry filed the instant Motion. An evidentiary hearing was held on December 14, 2022. Testimony was given by Sergeant Erich Jackson, Hawai`i County Police Department ("HCPD") ("Sergeant Jackson"); Officer Cacique Melendez, HCPD ("Officer Melendez"); Officer Kenneth Walker, HCPD ("Officer Walker"); Officer Adam Cho, HCPD ("Officer Cho"); and Lieutenant Tuck Loy Aurello, HCPD ("Lt. Aurello"). See Minutes - EP: [28] Motion to Suppress, filed 12/13/22 9dkt. no. 52).

In the early morning hours of January 5, 2022, Perry and his female passenger, Trina Macomber, were inside of his parked vehicle on a single-lane road in a remote and rural location in the South Kohala area on the Island of Hawai`i. Sergeant Jackson, while on duty, checked that location on that date and observed Perry's vehicle parked against a closed cattle gate. He parked his police vehicle, and he noticed that the passenger door was open, but then he observed it being closed. He called for police assistance, and then approached Perry's vehicle from the passenger-side. Questions ensued from Sergeant Jackson. Officer Walker subsequently arrived, followed by Officer Melendez and Officer Michael Collings ("Collings"), HCPD. More questioning took place and eventually Perry was asked to exit his vehicle, and he and Ms. Macomber were placed under arrest. Perry refused to consent to a search of his

3

vehicle and, as a result, Perry's vehicle was seized and subsequently searched on January 6, 2022, pursuant to a search warrant obtained from a state court judge.  A firearm and ammunition, methamphetamine and fentanyl were recovered from the trunk of Perry's vehicle.

## **STANDARDS**

> The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. Terry v. Ohio, 392 U.S. 1, 9 (1968); United States v. Cortez, 449 U.S. 411, 417 (1981).  Because the "balance between the public interest and the individual's right to personal security," United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975), tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "'may be afoot,'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, *supra*, at 30).  See also Cortez, 449 U.S., at 417 ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity").
>
> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing.  See, *e.g.*, id., at 417–418.  This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Id., at 418.  See also Ornelas v. United States, 517 U.S. 690, 699 (1996) (reviewing court must give "due

> weight" to factual inferences drawn by resident judges and local law enforcement officers). Although an officer's reliance on a mere "'hunch'" is insufficient to justify a stop, Terry, *supra*, at 27, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard, Sokolow, *supra*, at 7.

United States v. Arvizu, 534 U.S. 266, 273–74 (2002).[1]

Where behavior is susceptible to an innocent explanation, an officer may still stop an individual and investigate:

> Respondent and *amici* also argue that there are innocent reasons for flight from police and that, therefore, flight is not necessarily indicative of ongoing criminal activity. This fact is undoubtedly true, but does not establish a violation of the Fourth Amendment. Even in Terry, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. The officer observed two individuals pacing back and forth in front of a store, peering into the window and periodically conferring. 392 U.S., at 5–6. All of this conduct was by itself lawful, but it also suggested that the individuals were casing the store for a planned robbery. Terry recognized that the officers could detain the individuals to resolve the ambiguity. Id., at 30.
>
> In allowing such detentions, Terry accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause

---

[1] Arvizu was overruled in part on other grounds by Davis v. Washington, 547 U.S. 813 (2006). See, e.g., Frando v. Gore, Case No. 21-cv-01434-JLS-KSC, 2022 WL 207705, at *5 (S.D. Cal. Jan. 21, 2022), *report and recommendation adopted*, 2022 WL 772963 (Mar. 11, 2022).

>       to believe they have committed a crime may turn
> out to be innocent.  The Terry stop is a far more
> minimal intrusion, simply allowing the officer to
> briefly investigate further.  If the officer does
> not learn facts rising to the level of probable
> cause, the individual must be allowed to go on
> his way. . . .

Illinois v. Wardlow, 528 U.S. 119, 125-26 (2000).

During a Terry stop, officers may seize contraband under the "plain-view" doctrine:

>       The Court in Long justified this latter
> holding by reference to our cases under the
> "plain-view" doctrine.  See [Michigan v.] Long,
> [463 U.S. 1035,] 1050 [(1983)]; see also United
> States v. Hensley, 469 U.S. 221, 235 (1985)
> (upholding plain-view seizure in context of Terry
> stop).  Under that doctrine, if police are
> lawfully in a position from which they view an
> object, if its incriminating character is
> immediately apparent, and if the officers have a
> lawful right of access to the object, they may
> seize it without a warrant.  See Horton v.
> California, 496 U.S. 128, 136–137 (1990); Texas
> v. Brown, 460 U.S. 730, 739 (1983) (plurality
> opinion).  If, however, the police lack probable
> cause to believe that an object in plain view is
> contraband without conducting some further search
> of the object—*i.e.*, if "its incriminating
> character [is not] 'immediately apparent,'"
> Horton, *supra*, at 136—the plain-view doctrine
> cannot justify its seizure.  Arizona v. Hicks,
> 480 U.S. 321 (1987).

Minnesota v. Dickerson, 508 U.S. 366, 374–75 (1993) (some alterations in Dickerson).

Probable cause is required before making a warrantless arrest and

>       exists when "'the facts and circumstances within
> [the officers'] knowledge and of which they had

6

>  reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" Bailey v. Newland, 263 F.3d 1022, 1031 (9th Cir. 2001) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)).  Police must only show that, "'under the totality of the circumstances,'" "'a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.'" United States v. Valencia Amezcua, 278 F.3d 901, 906 (9th Cir. 2002) (quoting United States v. Garza, 980 F.2d 546, 550 (9th Cir. 1992)).

Hart v. Parks, 450 F.3d 1059, 1065-66 (9th Cir. 2006) (alterations in Hart).

## **DISCUSSION**

Sergeant Jackson is employed by HCPD as a patrol supervisor for the South Kohala District.  On June 4, 2021, he was on patrol and noticed a parked vehicle off Highway 190 and on a paved single-lane road in a rural area that runs up to a cattle gate and has an abandoned refrigerator on one side of the road.  This road is on private property owned by the Department of Defense and does not have street lighting. He drove up to the vehicle and questioned the sole occupant who told him that she was waiting to meet with Michael Perry to pick up narcotics.  During his questioning, the woman's cellular telephone rang and displayed the incoming caller as "Michael Perry."  Perry did not appear at any time that Sergeant Jackson was present at the location.  Sergeant Jackson did not find narcotics on the woman,

7

did not arrest her, and advised her to leave the area. Thereafter, he started checking that area every day when he was on duty.  He was on midnight duty four nights every week and would go up to that area each night.

On January 5, 2022, he was on the midnight shift and on patrol when he noticed a parked vehicle on the paved single-lane road.  He drove up to investigate and observed the vehicle parked up against the cattle gate with its passenger-side door open.  He parked his vehicle about 65 to 85 feet behind it, saw the vehicle's door close, and called for police assistance.

He approached the vehicle from the passenger's side and observed a male and female sitting in the vehicle as well as marijuana on the center console.  The vehicle was a white Toyota Solara.  He recognized the driver as Perry because he was familiar with him from prior police contacts:  from June 2021 on, he gathered information about Perry and, during that time, he received information from a civilian source that Perry was bringing narcotics into the South Kohala district, specifically methamphetamine; and approximately ten minutes before encountering the parked vehicle, Sergeant Thomas Chung Ming, a fellow HCPD officer, told Sergeant Jackson that Perry was seen that night coming into the South Kohala district and driving a white Toyota Solara.

Sergeant Jackson questioned Perry and noted that both Perry and Ms. Macomber appeared to be in various stages of undress. He concluded that the two had been engaged in intimate relations, which is not an illegal activity. Officers Walker, Melendez, and Collings subsequently arrived in separate police vehicles within minutes of Sergeant Jackson's request for assistance and parked their vehicles behind Sergeant Jackson's police vehicle, thereby effectively blocking the single-lane road to the extent that Perry could not leave the scene in his vehicle. Officers Melendez and Walker then proceeded to the side of Perry's vehicle; they asked questions of Perry and Ms. Melendez and looked inside the vehicle using their flashlights.

From the time Sergeant Jackson started questioning Perry or, at the very latest, when the first assisting officer arrived and parked his police vehicle behind Sergeant Jackson's vehicle, Perry was not freely able to leave and thus detained in an investigatory stop. His detention was permissible, based on the totality of the circumstances, because Sergeant Jackson had reasonable suspicion to believe that Perry was involved in criminal activity; specifically narcotics trafficking. See United States v. Valdes-Vega, 738 F.3d 1074, 1078 (9th Cir. 2013) ("Officers on roving border patrols . . . may conduct 'brief investigatory stops' without violating the Fourth

9

Amendment 'if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.'" (some citations omitted) (quoting Arvizu, 534 U.S. at 273, 122 S. Ct. 744)).

While the defense argues that Perry's vehicle was not parked in a "high crime area" and therefore no objectively reasonable basis existed for law enforcement to stop to investigate, this argument overlooks the fact that Perry's vehicle was parked in the identical location where a woman told Sergeant Jackson, about six months earlier, that she was waiting for Perry to arrive with narcotics.  The information known to law enforcement was thus that this location was associated with a specific individual presumably committing a specific offense, and not that the area in general was associated with certain types of crime.  See United States v. Montero-Camargo, 208 F.3d 1122, 1131 (9th Cir. 2000) (en banc) ("As we stressed earlier, reasonable suspicion requires **particularized** suspicion." (emphasis in original) (citations omitted)).  The particularized and objective basis for suspecting that Perry had committed a crime is the evidence, when taken as a whole, is that: Sergeant Jackson found Perry in the same location where Sergeant Jackson found an individual who stated she was waiting to get narcotics from Perry; a civilian source previously stated that Perry was bringing narcotics into the South Kohala area; Sergeant Chung

10

Ming's report on the same night that Perry was seen driving in the South Kohala area in a white Toyota Solara; and Perry was found parked in white Toyota Solara. Sergeant Jackson is permitted to draw on his experience and specialized training to make inferences and deductions about the cumulative evidence. See Arvizu, 534 U.S. at 273.

        Turning to the issue of Perry's arrest, Sergeant Jackson testified that, when he initially approached Perry's vehicle and started asking questions of Perry and Ms. Macomber, he observed "nuggets" of marijuana on Perry's center console and smelled the odor of both fresh and smoked marijuana emanating from the interior of Perry's vehicle. Sergeant Jackson left Perry's vehicle and walked back to his police vehicle. While Sergeant Jackson was in his police vehicle, Officer Walker arrived and parked behind Sergeant Jackson's police vehicle. Officer Walker was wearing a body camera, and when Sergeant Jackson is seen passing Officer Walker as the latter is approaching Perry's vehicle, Sergeant Jackson is heard stating, "Marijuana." Officer Walker proceeded to walk to the side of Perry's vehicle.

        Sergeant Jackson returned to Perry's vehicle and noticed that the marijuana "nuggets" were no longer on the center console. He questioned Perry about the marijuana, and Perry stated that he had a medical marijuana permit but admitted

11

that it was not on his person at the time. Sergeant Perry testified that medical marijuana is required to be transported in closed container and cannot be smoked inside a vehicle, and that a medical marijuana permit must be carried on one's person.

Officers Melendez and Collings arrived, and Sergeant Jackson told Officer Melendez that there was marijuana in the vehicle. Officer Melendez testified that he searched for the marijuana by looking under the vehicle and in the bushes near it but was unable to find any.

Sergeant Jackson asked Perry to exit his vehicle; Perry complied but asked if he could first put his shorts back on; Perry exited his vehicle and Sergeant Jackson met him at the back of the vehicle and asked for Perry's consent to search the vehicle, and Perry declined. Sergeant Jackson arrested Perry for suspicion of narcotics. Ms. Macomber was placed under arrest, and Sergeant Jackson requested police transport for both to the police station. Perry's vehicle was eventually towed to the South Kohala police station. The matter was referred to the Vice Division.

Officer Adam Cho ("Cho") testified that, on January 5, 2022, he was assigned to the Vice Division, Narcotics section; he asked Perry at the police station for consent to search Perry's vehicle and Perry refused consent; he drafted a search warrant; he did not include in the affidavit for the search

12

warrant that Perry was suspected on being involved in drug trafficking; he obtained the search warrant and search the vehicle and any closed containers inside of it; and prepared an inventory of the items seized.

Perry was arrested without a warrant and thus his arrest must be supported by probable cause.  If not, then evidence of the items seized after his arrest must be suppressed.

> "Probable cause exists when, 'under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.'" United States v. Potter, 895 F.2d 1231, 1233–34 (9th Cir.) (quoting [United States v.] Smith, 790 F.2d [789,] 792 [(9th Cir. 1986)]), cert. denied, 497 U.S. 1008, 110 S. Ct. 3247, 111 L. Ed. 2d 757 (1990)); see also [United States v.] Del Vizo, 918 F.2d [821,] 825 [(9th Cir. 1990)].  Law enforcement officers may draw upon their experience and expertise in determining the existence of probable cause.  [United States v.] Hoyos, 892 F.2d [1387,] 1392 [(9th Cir. 1989)].[2] Thus, seemingly innocent conduct may provide the basis for probable cause when viewed in light of all of the information known at the time of the arrest.  United States v. Rodriquez, 869 F.2d 479, 483 (9th Cir. 1989) (pattern of activity consistent with participation in drug trafficking sufficient basis for probable cause to stop vehicle and arrest defendant when he took delivery of vehicle from persons suspected of involvement in narcotics trafficking, even though surveilling officers saw no narcotics).  "The arresting officer need not have personal knowledge of the facts sufficient to constitute

---

[2] Hoyos was overruled on other grounds by United States v. Ruiz, 257 F.3d 1030 (9th Cir. 2001) (en banc).

13

> probable cause. Probable cause may be based on the collective knowledge of all of the officers involved in the investigation and all of the reasonable inferences that may be drawn therefrom." Hoyos, 892 F.2d at 1392 (citations omitted).

United States v. Garza, 980 F.2d 546, 550 (9th Cir. 1992) (some alterations in Garza).

While the defense correctly points out that Perry and Ms. Macomber were likely engaged in seemingly innocent conduct while parked in a rural location (that is, consensual adult relations), law enforcement at the time of Perry's arrest was aware of far more information consistent with drug trafficking: six months before Perry's arrest, a woman was found and questioned by Sergeant Jackson in the same location where Perry and Ms. Macomber were found, and the woman told Sergeant Jackson that she was waiting for Perry to deliver narcotics and, while being questioned, the woman's cellular telephone alerted and indicated that Perry was calling her; Sergeant Jackson had knowledge from police briefings that Perry was suspected of trafficking in narcotics in the South Kohala area and driving a white Toyota Solara; about ten minutes before Sergeant Jackson came upon Perry's parked vehicle, Sergeant Chung Ming had called Sergeant Jackson and told him that he saw Perry driving in the South Kohala area in a white Toyota Solara; Perry was seated in the driver's seat of a white Toyota Solara when Sergeant Jackson

approached the stopped vehicle; and Sergeant Jackson observed marijuana nuggets on the center console that, a few minutes later, disappeared.  These facts support a finding of probable cause for Perry's arrest because, under the totality of the circumstances known to Sergeant Jackson, evidence exists for a prudent person to conclude that there was a fair probability Perry was trafficking in marijuana and/or narcotics.

### CONCLUSION

For the foregoing reasons, Defendant Michael K. Perry's Motion to Suppress filed on September 19, 2022, [dkt. no. 28,] is DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 9, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**USA V. MICHAEL K. PERRY, JR.; CR 22-00010 LEK; ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS, [FILED 9/19/22 (DKT. NO. 28)]**